Good morning. Good morning, Your Honor. Good morning, Judge Wallace. Joseph Tartakovsky for the Nevada Labor Commissioner. I'll aspire to save seven minutes for rebuttal. How long? Seven? Seven minutes. Okay, thank you. Thank you so much. May it please the Court, I'll start with mootness. This case is not moot because there exists a live, active, concrete dispute over what statute of limitations should apply between 2015 and 2017. Is it what the Nevada legislature wanted, which was one year, or is it what the district court said had to be because of preemption, three or four years? This is a law that governs every major construction dispute in the state of Nevada. The difference between one year and three years is obviously dramatic. If you rule in our favor, two-thirds of disputes would disappear. So this case is not moot. Well, it's how many disputes really are there? You're kind of, you know, the sky is falling chicken little here, but how many really are there in that period of time? How many? Yeah. Well, it's impossible to say exactly because most of these occur outside of court, but there are at least hundreds of major construction projects in Nevada a year. On those major products, each major product could have dozens of subcontractors. The statute of limitations would govern in each case. Presumably the trust didn't bring this suit because this is some kind of peripheral inconsequential law that rarely comes up. The legislative record, one attorney testified that he's handled hundreds of cases. So this is 20 — it's 21 months of disputes. It's a significant number. Now, our position is that even if it involved 10, as opposed to 10,000, we'd still be entitled to seek a review. So what is it that the parties agree is moot? So we — to follow the rubric that we put in our opening brief, there were four — SB223, the 2015 enactment, where it was a collection of reforms. Four of the five are gone. What we disagree upon is whether the statute of limitations that the legislature set out in 2015 is moot, and then relatedly the question of severability. That's because the district court found that the statute of limitations was itself not preempted. That is, if it had been enacted as a sort of standalone measure, it would not have been preempted by ERISA. The trust seemed to dispute that that's what the court actually did, but it's at EOR 6, and it seems to me plain as day. It's not really clear to me that the — what the district court did on severability. There's some kind of ambiguity in that. You argue that it's clear as a bell, but it seems to be one sentence says it's severable, the other sentence says it's not. What I mean by clear is the finding that the statute of limitations was not in and of itself preempted, and because the court found that that was preempted, the court just then moved to severability. So it's not preempted, but is it? Does it have to go down nonetheless because these other components of the larger rule? So did the district court rule on severability? Yes. And that's where the district court erred, and that's the principal issue before you now. The Federal courts follow Nevada law on severability. The test is very simple. It's the same in Federal courts. Can the law be severed? The part that you're going to say, can it be severed? Well, the statutory language doesn't say it can, right? You don't have — like, some statutes say specifically in the address in there severability, right? And this one does not. It doesn't say anything about it, right? Right. But that has no significance whatsoever because at the very beginning of the Nevada — Well, wait. It has — if it — what did say — if it did talk about severability in there, would you be telling me it was significant? No. Because NRS 0.020 at the very beginning of our Nevada Code says that you presume that all laws are severable. You don't need to put a severability clause in. Some statutes do duplicatively, but the statute says whether you put it in or not, it means nothing. It's not more severable if it's in there. It's not less severable if it's not. That's a general severability clause. The district court was completely wrong on that point to make some sort of inference that there's no severability because of the lack of that clause. The district court in writing that found that although there is this clause, since there's no general severability clause, although it's — because it's not in this law, that inference is — disappears or weakened. The Court cited three cases for this proposition, every one of them utterly inapposite. One of them involved — so this provision applies to the NRS, the Code. One case the Court cited was for session laws. These are laws that are not put into the Code. So the presumption doesn't apply. It was in that case a — the legislature ordering the issuance of a bond. The Court cited a case that was decided before this severability clause was put into our Code. So that doesn't help either. Okay. Let's — let me find out exactly what you want us to do. All right. You want us to say that it's not moot as to the statute of limitations, correct? Yes, correct. And that that is severable, and so the 1-year statute of limitations should apply from 2015 to 2017. Yes. But you agree that it's moot as to everything else? Yes. But you agree that it's moot because, of course, you lost in the district court on all of the other issues. And so you wouldn't want us to say that the district court was — you wouldn't want us to say, okay, it's not moot, but we're going to affirm the district court in its entirety. You wouldn't want that, would you? We — we think the statute of limitations is the only limit. No, but I'm asking you, you wouldn't want that, would you? Let's say we said it wasn't moot, and then we affirm the district court in its entirety. No, I wouldn't want you to affirm it because the district court was making — But we — but that's one of our options, right? We could say it's not moot, and we could affirm the district court in its entirety, correct? You could, although I do think that the sort of the Munsingware doctrine sort of seems apposite here in that — All right. But tell me how that would play out in a practical sense. Let's just — I'm not — we haven't conferenced on this. I'm not saying — this is the hypothetical. But let's say we say it's not moot. We agree with you on that. But we don't agree with you that it's only not moot as to the statute of limitations. And we get to the merits, and we affirm the district court. Where does that put you? Well, the Munsingware doctrine is designed to ensure that a party who wins below doesn't do something on appeal to moot the entire case and then deny us appellate review. That seems to be very much what they're trying to do. They're saying we won below. We want to preserve our victory. We want to keep this district court decision, but also to say that you don't have appellate review because this is moot. Okay. So that's what they want. But you don't want that. You just want us — you want us to say it's not moot as to the statute of limitations, and you want to win on the one year, so that 2015 to 2017. And then they can then — but then if we say it's moot as to everything else, then if they choose to challenge the new statute, that they do that anew without the benefit of the old — of a preemption ruling, correct? Correct. So everyone wants — wants us to do a little bit — something a little bit different, but that also affects what's going to happen with any challenges to the new statute, right? That's right. I mean, it seems to me slightly suspicious that they don't — they say there's no more injury. We're in the clear. We're fine now. But they won't stipulate to vacating the decision below. It seems to me that they have further intention. Right. But then — but you don't want to have total mootness because you want to retain the one year, and then you want to be able to litigate, but you don't want to be — but you don't — you don't want any litigation on the new statute to be tainted by what the district court did previously. So — We think the district court was wrong. I would have liked to ask you to reverse the district court entirely, but we're trying to be candid with the court. The Nevada legislature changed the law in 2017 and made all of those — In response to a judicial ruling. In response. Now, this doesn't mean they conceded that the district court was right. They thought the district — No, right. But it — They had no — But it does put you in a different position if Nevada court had — if the Nevada legislature had changed a law not in response to a judicial ruling. That — it's a little different lens. Well, there's a Federal court that said we can't do what we did. So they went back to the drawing board, essentially enacted the same thing without the problems that the district court identified. This is all — we've restored most of — They took the language of ERISA out. We just took — we just took that out. And if that — But they can still make the argument to the new one that even though it doesn't refer to ERISA, that it interferes with the administration of the trust. But it isn't — they don't have as good an argument because you don't have ERISA, ERISA, ERISA stamped all in the legislation. Right? They could make that argument. They say in their brief, and we'll take them at their word, that they're fine now. Okay. But that's why the legislature — that's why the legislature did it. It shows how important the legislature thought it was. Now, as to the mooters, I'm not — my argument is not that I would like this. I just think that's the law. The legislature made all this stuff — They cut out all of our options and what's the practical effect. Right. You're down to five minutes, and I've certainly taken some of your time. So do you want to reserve unless either of my colleagues have questions? Tell me on your mootness issue. It strikes me that the mootness issue, if it is moot, there's nothing we can decide. Would it be your position if we agree with that that we should direct the district court to vacate their judgment as the matter is moot? We would ask you to do that. Our preference is for you to address the statute of limitations and the severability on the merits. But if you do find that this case is moot, yes, we'd ask you to vacate the decision below. Okay. I'll reserve. All right. I'll give you five minutes to rebuttal. Okay. Thank you. All right. Before we start the clock, I just want to ask a question of counsel for the — I just wanted to make sure. Are you the only one that's arguing? I'll be arguing the cause today. Okay. So you're not sharing time with anyone else? Sure. Thank you. Okay. Then we can start the clock. And please state your name and appearance. Good morning, Your Honors. Good morning. My name is Wesley Smith. I am counsel for the appellees. With me today is Mr. Bryce Loveland and Mr. Sean McDonald. I'll be arguing the entirety for the appellees today. So let me just first state that this is the state's appeal, obviously. Right. We won below, and the state appealed the district court's decision. Now, in light of the passage of SB338 in 2017, the state has conceded that there are really only two issues that it's still pursuing. Well, even if all of you concede and agree, we're not bound by whatever all of you say. We get to decide things. Certainly. And that's your prerogative, and that's fine. I just wanted to point out that the state is only pursuing those two things. And so — Okay. So they're only pursuing the statute of limitations and — And if the statute of limitations does not move, then it can be severed from the rest of SB223. So what's your position on whether the district court ruled on the severability? It absolutely did. And it may be confusing because the severability under Nevada Supreme Court precedent has a two-part test. The first is whether that statute can stand on its own grammatically, which the district court said the statute of limitations could stand grammatically. It doesn't have any direct reference to ERISA plans within it. But once you do that, you also have to show that the legislature intended for it to stand on its own. Now, the state of Nevada relies upon NRS 0.020 to say that the legislature gave its direction on what to do with severability. It told us its intention. However, NRS 0.020 was enacted in 1977, many years before this 2015 law. Certainly, the state even conceded that there are statutes that have a severability clause put into them, even despite this general severability clause. But most importantly, the Nevada Supreme Court has looked at this general severability clause and said that it's a preference, not a mandate. You still have to go through that two-part severability test to determine legislative intent. So looking at this legislative history, we can see what the legislature's intent was. And throughout the legislative history that we provided to the court, that we provided the district court, they had the benefit of it. When you go through that legislative history, it becomes clear that the Nevada legislature intended to regulate employee benefit plans. In fact, on the very first page of their statement of the case, they even conceded that. This is on page 9 of Docket Entry 11 in the state's opening brief. It says, in 2015, Senate Bill 223 amended Nevada construction law to stop what the legislature perceived to be unfair practices by labor union trusts, like plaintiffs. They've actually said that was the whole point of the statute, regulate employee benefit plans. Now, the district court, when it went through this severability analysis, it actually said, this is what it said. I'll read this to you here. Sorry. It said that the statute limitation was not severable because it was, quote, only seen as reasonable as part of a larger political process in which, in exchange for a short limitations period, Section 4 of SB 223 amends NRS 108 to require contractors participating in a health and welfare benefit plan to provide project-specific information to the plans. So that's on page 6 of the record. I'm going to give you just one example from the legislative history that supports the district court's conclusion that there was a political process and that the statute of limitations was connected to the other provisions of the bill, which it had found was preempted. Now, that comes from an April 27, 2015, assembly meeting, where in the minutes of that meeting, we provide a link to that on page 44 of our brief. And the district court was provided video because the minutes weren't yet available. And so at the top of page 7 in those minutes, Senator Settlemyer says, what is in front of you is a compromise in that respect. And then further down on page 7, this is explained. A woman named Joanna Jacobs says, I am here to walk you through the bill and talk to you about some of the key parts where we compromised. Continuing on page 8, Section 2 is the statute of limitation period that Senator Settlemyer mentioned. We moved it to a one-year statute. I want to draw your attention to the next – So this is all legislative. This is not the words of the statute, though, right? This is all your – This is what the legislature said about the changes that were made during the legislative process. When SB 223 – If we want to look beyond the words and if we want to – all of that, right? If you want to look beyond the words of the statute, yes. Right. But some people don't like to do that. Well, if you're looking at legislative intent, you can look at the words of the statute. It doesn't have a severability provision. So the legislature hasn't told us what the intent was with this specific bill. So in order to determine legislative intent, which is what the district court did, it looked at the legislative history. Okay. Let me ask you this just so – because just trying to understand the practicality of this, that if this court were to find that it was moot, then that essentially vacates the district court's ruling, correct? And then you're free to challenge. And then it would also allow the statute of limitations. It could arguably allow the statute of limitations, the four-year, to be in effect from 2015 to 2017, right? Well, it would not necessarily – if you say that this appeal is moot, that does not mean that you vacate the decision below. The Ninth Circuit previously stated in a court called Kammermeier v. Perry, and that's a 1996 decision, that when courts consider whether to give relief when there's mootness in an appeal, they don't vacate the decision below if the mootness was created by the appellant. And so in this case, the state of Nevada is the one that enacted this statute in 2017, which created the mootness. There's no reason to vacate the decision below. I think one of the points that you're making now is one that was significant to me. You're saying the state of Nevada, but the state of Nevada is divided into units. There are three branches. And there's no indication in the record that the executive branch had any influence on the legislature. And following that line, I don't see how there's – if it's moot, I don't see how there's any power left in the district court to give advisory opinions, and we'd have to order the district court to vacate. What's your response to that line of argument? Well, the district court wouldn't have been given an advisory opinion at the time it entered its decision. When it entered its decision in 2016, this SB338 had not yet been enacted. And certainly the state has been arguing that the entire reason why it wants to enforce this law is because the Nevada legislature enacted it. It's trying to protect Nevada. Well, I know that, but we're talking about a judgment. And when the judgment is vacated, everything goes out. It doesn't matter what the time is, but our usual process is, if the case is moot, that we dismiss the appeal with instructions for the district court to vacate the judgment. I don't see where you have a case that says we should vary from that process. Well, we do have a case. When we argued in the motion to dismiss, we argued that the district court opinion below should not be vacated. And the reason why is because there was ninth circuit cases that talked about when you go through that analysis, you're trying to determine whether or not the appellant caused the mootness. Okay, I understand that. But there's not a shred of evidence in the record that the executive department was meaningfully involved in what the legislature did. Not any evidence at all, is there? No, there's not. We simply don't see the distinction between the legislature as the legislative branch and the state of Nevada as the executive branch. You don't see the separation of powers doctrine? We understand that doctrine. However, we understand the state of Nevada as representing the state of Nevada's interests. It may have individual branches within that, but all of them are supposed to represent the people of Nevada. And what's the best case you have that when the executive branch has done absolutely nothing, and the legislative branch has done this, that somehow this is the – that we apply this doctrine you choose? What's your best case? Your Honor, I don't have a case that's directly on point on that issue. I'm grateful to hear you say that because I couldn't find one either. So what do we do with it? Excuse me, Your Honor? What was that? What do we do with it? If we agree, do we have to go back now and decide whether or not the separation of powers doctrine does not apply in this case? And if the judiciary or the legislature do anything that is involved in the case that we have to consider, they speak for all of Nevada. Ultimately, Your Honor, when we filed this motion to dismiss, we were hoping that we would be able to avoid the cost and expense of being here today in the first place. We're here today, and we're arguing the merits of the appeal. Certainly, we continue to argue that the district court made the correct decision on the law, and there's no reason to take the district court's decision, which is correct on the law, and vacate it when the district court made the correct decision at the time that it made it. Certainly, the legislature came in and enacted a statute later, which mooted the issues for the appeal, but that doesn't mean that it erases legislative history. It doesn't mean that the district court got that decision wrong when it looked at what the legislature had done and said that was incorrect. And so to vacate that decision, it essentially will wipe the slate clean and allow the legislature to come in again and reenact different legislation, where if you leave the district court decision intact, then the legislature will be strongly discouraged from doing this in the future. I understand your argument, but the problem I have with it, if the district court had no power, then to do this because the case has become moot, I don't see how we can give an advisory opinion, let the district courts become an advisory opinion. Excuse me, Judge Scalma. I didn't mean to interrupt. Well, the substantive provisions here are important to you, important to the trust generally, I would think, in Nevada. Why are you giving mootness such a sweeping force here when one could argue that there's at least some possibility similar legislation could be adopted, and as a prophylactic matter, we really ought to address the substantive issues? Absolutely. The substantive issues are very important to these trust funds. In fact, to all ERISA plans within the state of Nevada, and probably ERISA plans across the country, because we don't want to see, obviously ERISA was enacted for the sole purpose of keeping these kinds of regulations from coming down from the general state. Well, let's suppose what would be the effect if we say that it's not moot and we address the merits of this, and that what if the court were to conclude that the state has the power to say how debts are collected and the fact that it affects the state. The state gave you the power in the first place to do it, and the state can take it away, and so it's, you know, that it's not preempted. That would be the argument for it not being preempted. So if we say it's not moot and we go back and review the merits and reverse the district court, then if this statute, if that statute is not, can be upheld, certainly that would be the death knell to the one that they passed, right, where they don't mention ERISA. Yeah. We have never argued that ERISA plans are not subject to general applicable legislation within any state. And debt collection. And debt collection, absolutely. The Nevada Supreme Court or the Supreme Court of the United States has said that. In the Mackey case, there was two statutes in that case at issue. One of them was held to be preempted because it applied exclusively to ERISA plans. But you lose under Mackey because Mackey does seem to, that's a case that could be argued to not help you. I don't agree with that. I believe that it does help us because there was another statute that was a generally applicable statute. And so this statute, SB-223, when that was enacted, it was not a statute of general applicability. There are specific requirements within that bill that only apply to ERISA benefit plans. But is that really controlling if the subject matter is of general applicability? Suppose there's a concern about safety for trusts because pension plans are running short of money and there's popular uproar. Suppose the state said we want to protect the facilities of pension plans generally. And you're going to have to put a 10-foot chain link fence around your facility and have limited access. Because we're concerned about safety given public uproar, pension plans are running out of money. Statute of general applicability, but it says it shall affect ERISA plans specifically. Lawful? If it applies to everyone? No, but it specifically references ERISA plans in the statute. If it, does it apply to everyone, though? If it applies to everyone. If it applies to everyone, then that is a lawful legislation. So merely referencing an ERISA plan is not determinative? No, it's not. In fact, there are cases that hold that, where there are statutes that say, oh, by the way, ERISA plans are included as a proper claimant. In those cases, that's okay. In fact, there's California, it's a mechanical lien law that applies that. And the California Supreme Court held that. It's called Benton Court is the case from 2013. I see that I'm almost out of time. I just want to conclude. You're out. Oh, I'm going over. Sorry, Your Honors. But the question is, let me find out if my colleagues have any additional questions. Judge Wallace? I'm fine. Thank you. We don't have any additional questions. Thank you. Thank you, Your Honors. Just very briefly on the Moody's point. You're exactly right, Judge Wallace. We, the Labor Commissioner did not move this case. The law changed. The legislature changed it. It was forced to do so by decision of the district court. We didn't have this law on the books. Well, it seems like it's Nevada pretty much acting simultaneously. This, I mean, the new law is responsive to exactly the problems that you were facing. I mean, they're trying to respond to a case that you lost in front of a district judge. The way to think about it is that Nevada, as the Labor Commissioner, this was changed on us, too. This mootness doctrine applies when a party takes strategic action to moot. It's an action that's within the control of the party. The Munsingware case itself said what you have just said, Judge Wallace. It was the executive branch enforcing something. Congress changed the law on them. And the Munsingware doctrine could apply in that case. It's the same scenario here. Now, just on the merits of the severability issue, we think this was utterly impermissible, what the district court did. It found that you could sever it, but you wouldn't, the legislature didn't want to because of this larger political process or exchange. Now, they had three chances below to give us a single citation to the legislative history where this extraordinary doctrine comes up that defies the normal presumption. What you just heard now, this is the first time they've actually offered a single instance from the legislative history. Now, this is not in their briefing. I happen to know what they're talking about. And someone uses the word compromise. The compromise they're talking about was over the length of the statute of limitations. The general contractors had wanted 30. The original draft said 90. It eventually became a year. There was not some bargain among the legislators that they would have only wanted the statute of limitations to survive if these other pieces survived. What he just quoted, these are witnesses. These are partisan witnesses to the legislature. These people are not proxies for what the legislature thought. This idea that they would have, that there was some kind of unwritten thing where there's a collection of reforms to the Nevada construction industry writ large, that they all have to rise and fall together. I mean, this is extraordinary. We've never seen anything like this, and it was concerning enough for the legislature to file a brief. It makes no sense. The statute of limitations easily survives on its own, functionally, grammatically, structurally. It was the most important thing the legislature wanted to do. And we are saying that there is literally no evidence of any legislature, legislator, deciding among themselves or with colleagues that this is something, that they would not have wanted the statute of limitations to survive. That's very clear. But does it really matter if it's a result of a compromise if the statute, the statute of limitations portion is severable on its face, even if it is a compromise? No. I mean, I think that we think on its face it should be saved. The statute of limitations says nothing about the truss. It is a law, it is a generally applicable law. This is not correct that it only applied to truss. It applies to anyone who could bring an NRS 608, this vicarious liability claim. Truss, workers who are not represented by truss, DAs, the AG, the labor commissioner, all these parties can enforce this law. They all get one year. So why didn't you make the two years retroactive? You made everything else retroactive. Why didn't you make the two years retroactive? I don't know, Your Honor. It's not the legislature did that. It's not me. I don't know why they did that. It's certainly shorter than the three or four years that they said was commanded or governed or authorized or protected by ERISA. But it's certainly not part of the sausage making that is inevitable in every law. But it's certainly short. They had taken the position that anything under three or four years violates ERISA. So we're still under that two years. Maybe they're happy with that. It's still shorter than what it was. We know the legislature wanted to make it shorter. And what's interesting about your point just now is that they made everything in the law retroactive except for the statute of limitations. They left the 2015 one year in place, which to me, if there's any inference, it's that they really wanted this one year between 2015 and 2017. They didn't touch it. I don't think we have any additional questions. Okay. Thank you, Your Honor. All right. Thank you both for your argument in this matter. This will stand submitted.
judges: Wallace, Callahan, Selna